Doug **FLYNN**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 03A01–9707–CR–238.

Court of Appeals of Indiana.

Dec. 4, 1998.

Andrew J. Baldwin, Eggers & Baldwin, Franklin, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Doug Flynn appeals his convictions for two counts of burglary, both class B felonies, and theft, a class D felony. Flynn raises five issues which we expand and restate as:

(1) whether Flynn should have been permitted to review all evidence before trial, including a videotape of the arrest scene;

(2) whether the trial court erred in admitting Kim Collins' out-of-court statement;

(3) whether Collins' taped statement and its transcript were improperly received as exhibits;

(4) whether the trial court erred in allowing Collins to testify;

(5) whether the trial court erred in admitting evidence of prior bad acts;

(6) whether the assigned public defender should have continued as counsel to Flynn;

(7) whether the trial court erred in ordering Flynn's sentence for the theft conviction to run consecutive to the sentences for the burglary convictions.

We affirm.

The facts most favorable to the judgment follow. Teresa Toppe woke her husband, John Toppe, because she heard someone in their home. Thereafter, they both heard heavy footsteps and the door to the garage

slam shut. John ran into the garage and, although he observed no one, noticed the garage door had been opened. He then heard a car start and ran to the street where he observed a dark-haired, white male in a red car that looked like a Taurus. The man drove the car away without turning on his lights, and John observed it leave his subdivision. John then returned to his home where Teresa had telephoned the police. He then provided the dispatcher with a description of the man and car.

Officers Chris Couch and Roger Fields each responded to the dispatcher's broadcast of a possible burglary. As they drove their vehicles toward the Toppe home, they observed a car that matched the description heading away from the subdivision. Consequently, they turned around and chased the car. After some time, the car stopped in the parking lot of a Ramada Inn. The driver exited the car and threw several items away from the car. At this time, Officer Couch observed a female passenger exit the car. He then ordered both the male driver and the female passenger to "freeze" and handcuffed the driver. The police later identified the driver as Flynn and the passenger as Collins. Also, Toppe later identified the vehicle Flynn had been driving as the one he observed in front of his home.

The items Flynn threw away from the car were later identified as property that had been stolen from houses near the Toppe home. Specifically, a purse and wallet were found that belonged to Mitsuro and Tetsuko Ueno. Also, items of mail were found that belonged to John and Tomasa Edwards. The officers arrested Flynn, and the State charged him with two counts of burglary and one count of theft. A jury found him guilty as charged. Additional facts relevant to this appeal will be provided as necessary.

## I.

■ The first issue is whether Flynn should have been permitted to review all evidence before trial, including a videotape of the arrest scene. The extent of Flynn's argument consists of the statement that "[his] inability to view all of the evidence which would be used against him at trial is also an error which prevented him from adequately preparing his own defense and warrants reversal." Appellant's brief, p. 40. Flynn does not present a cogent argument or cite to authority. Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record. Ind. Appellate Rule 8.3(A)(7); *Corley v. State*, 663 N.E.2d 175, 176 (Ind.Ct. App.1996); *Nordstrom v. State*, 627 N.E.2d 1380, 1385 (Ind.Ct.App.1994), *trans. denied*. Therefore, Flynn has waived this argument.

## II.

■ The second issue is whether the trial court erred in admitting Kim Collins' out-of-court statement to Officer Robert Jarrard regarding the events in question. Flynn first argues that the statement should not be admitted as a past recollection recorded under Ind. Evidence Rule 803(5). Under this exception, a witness must have personal knowledge of the event which she contemporaneously recorded or adopted, if recorded by another, while she retained a clear memory of it. *Wininger v. State*, 526 N.E.2d 1216, 1219 (Ind.Ct.App.1988), *trans. denied*. Also, the party offering the recording must establish that the witness has no present recollection of the events to be proven in order for the writing to be admitted. *Id.* Under this doctrine, the witness' lack of memory serves as the vehicle for the admission of the written memorialization of the knowledge she once retained. *Id.*

■ Here, Officers Couch and Fields both testified that they spoke to Collins at the scene. After Couch questioned her story, Collins informed him that she had been sleeping in the car when Flynn woke her by jumping into the car with the stolen items. Officer Jarrard testified that Collins provided him with a full and complete recorded statement of what occurred that night. Thus, the State demonstrated that, at the time of the incident, Collins did have personal knowledge of the events that occurred that night. In addition, the State demonstrated Collins' lack of recollection through her testimony at trial. Thus, the trial court properly admitted the statement under Evid. R. 803(5).

Despite this, Flynn contends the admission of the statement violates his constitutional right to confront witnesses. Our supreme court has recognized that "those accused of crime are guaranteed the rights of effective confrontation and cross-examination by our constitutions." *Holmes v. State,* 671 N.E.2d 841, 859 (Ind.1996), *reh'g denied, cert. denied.* Consequently, "[e]xceptions by which hearsay evidence may be lawfully admitted into evidence must be separately tested to determine whether their application is violative of those rights." *Id.* (*citing Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). For a statement to overcome the rights to confrontation and cross-examination, the State must prove that a hearsay statement bears an adequate indicia of reliability. *Holmes,* 671 N.E.2d at 859. This reliability may be inferred if a statement falls within a firmly rooted hearsay exception. *Id.* If the exception fails to qualify as firmly rooted, "the State must show 'particularized guarantees of trustworthiness' which include 'only the circumstances surrounding the making of the statement and that render the [source of the hearsay statement] particularly worthy of belief.'" *Id.* (*quoting Wright,* 497 U.S. at 819, 110 S.Ct. at 3148).

Here, we have determined that Collins' prior recorded statement fell with a firmly rooted hearsay exception under Evid. R. 803(5) as a prior recorded statement. In addition, the testimony of Officers Couch, Field, and Jarrard render the taped statement from Collins worthy of belief. Also, Flynn cross-examined Collins at her deposition, at a pre-trial hearing, and at trial. Thus, Flynn's rights to confrontation and cross-examination were not violated. *See Holmes,* 671 N.E.2d at 859. Therefore, the trial court did not err in admitting Collins' out-of-court statement. *See Wininger,* 526 N.E.2d at 1219.

### III.

The third issue is whether the audio tape containing Collins' taped statement and its transcript were improperly received as exhibits. Flynn contends that State's Exhibits 17 and 19 were received as exhibits in contravention of Evid. R. 803(5) which provides, in relevant part, that if a prior recorded recollection is admitted, "the memorandum or record [containing the recollection] may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." Both the tape and transcript were marked as exhibits. Thus, they clearly violate Evid. R. 803(5). Therefore, the trial court erred in receiving the tape and transcript as exhibits.

However, our analysis does not end here. Indiana Evid. R. 103(a) provides in relevant part:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...."

Under this rule, the erroneous admission of the evidence is not reversible unless it prejudices the complaining party. *Columbian Rope Co. v. Todd,* 631 N.E.2d 941, 945 (Ind. Ct.App.1994), *trans. dismissed.* Thus, Evid. R. 103(a) invokes the "harmless error" analysis.

Although Flynn objected to the admission of the prior recorded statement, he did not specifically object to the receipt of the tape and transcript as exhibits under Evid. R. 803(5). While the tape and transcript should not have been received as exhibits, trial counsel's failure to object waives such error unless the receipt of the exhibits constitutes fundamental error.[1] *See Davis v. State,* 598 N.E.2d 1041, 1048 (Ind.1992), *reh'g denied, cert. denied, Davis v. Indiana,* 510 U.S. 948, 114 S.Ct. 392, 126 L.Ed.2d 340 (1993). A finding of fundamental error re-

---

1. Our supreme court has held that "[e]ven when procedural default does not preclude asserting the claim of error, such error may nevertheless be found harmless and thus insufficient to re- quire reversal." *Davis v. State,* 598 N.E.2d 1041, 1048 (Ind.1992), *reh'g denied, cert. denied, Davis v. State,* 510 U.S. 948, 114 S.Ct. 392, 126 L.Ed.2d 340 (1993).

sults only when the error is a substantial blatant violation of basic principles rendering the trial unfair. *Id.* This determination includes consideration of the potential for resulting harm. *Id.* Similarly, an evaluation for harmless error involves considering the likelihood that the questioned evidence may have contributed to the conviction. *Id.*

A redacted tape of the statement was played for the jury. As Evid. R. 803(5) provides that a memorandum or record of the recollection may be read to the jury, there can hardly be error where the jury is allowed to hear the witness herself as recorded when she gave the information she now fails to recall. There is no indication in the record that either the written transcript of the statement or the tape of the statement were ever given to the jury. In fact, the record reveals that the trial court specifically denied the state's request to provide the jury with the transcript of the statement. There is no basic violation of basic principles here. Therefore, he has waived this issue. *Id.* Waiver notwithstanding, any error was harmless as Flynn failed to demonstrate that a substantial right had been violated. *See* Evid. R. 103(a); *Davis,* 598 N.E.2d at 1048.

## IV.

■■■■ The fourth issue is whether the trial court erred in allowing Collins to testify. Specifically, Flynn contends the trial court erred in failing to hold a hearing to determine Collins' competency as a witness. When competency to testify is placed in issue, it is the trial court's duty to schedule a hearing to determine whether the witness is in fact competent to testify. *Hughes v. State,* 546 N.E.2d 1203, 1209 (Ind.1989). The test used to determine the competency of a witness is to determine "whether the witness has sufficient mental capacity to perceive, to remember, to narrate the incident he has observed, and to understand and appreciate the nature and obligation of an oath." *Id.* This determination of competency is a matter placed in the sound discretion of the trial court which is reversible only when a manifest abuse of discretion has occurred. *Id.*

■■■■ Flynn filed a motion challenging the competency of Collins as a witness. At trial, the trial court excused the jury before the State introduced Collins as a witness. Thereafter, it heard arguments on Flynn's motion. On appeal, Flynn argues that Collins' failure to remember causes her to be an incompetent witness. We disagree. First, Collins had personal knowledge of the event as evidenced through her statement to the officers. Second, the mere failure to remember does not make a witness incompetent. Finally, the trial court had previously heard Collins testify in a hearing in this case prior to trial and determined that "she was not mentally incompetent." In fact, the trial court directly inquired of Collins. Consequently, Flynn failed to demonstrate a manifest abuse of discretion by the trial court. Therefore, the trial court did not err in allowing Collins' to testify at trial. *See id.*

## V.

■■■■ The fifth issue is whether the trial court erred in admitting evidence of prior bad acts. The admission of evidence related to uncharged conduct is governed by Evid. R. 404(b) which provides in relevant part:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ..."

The trial court has broad discretion to determine the admissibility of evidence, and we will not reverse the trial court's ruling on the admissibility of evidence absent an abuse of discretion. *Willoughby v. State,* 660 N.E.2d 570, 580–81 (Ind.1996). Our supreme court has held that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." *Taylor v. State,* 659 N.E.2d 535, 543 (Ind.1995) (*quoting Lannan v. State,* 600 N.E.2d 1334, 1336 n. 4

(Ind.1992) (adopting Fed.R.Evid. 404(b))).[2] "If a court finds that the evidence was 'offered to prove something other than the defendant's bad character or propensity to commit the charged crime,' it must then determine whether its prejudicial impact substantially outweighs its probative value." *Id.* (*quoting Hardin v. State*, 611 N.E.2d 123, 128 (Ind.1993) (adopting Fed.R.Evid. 403)). We have held that the trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission, and its ruling will be reviewed only for an abuse of discretion. *Smith v. State*, 678 N.E.2d 1152, 1157 (Ind.Ct.App. 1997), *reh'g denied, trans. denied*, 690 N.E.2d 1180.

 Flynn argues that the trial court erred in permitting Collins to testify regarding an incident where he allegedly tied her to a chair and then threatened to kill himself in front of her. The State argues that this testimony was admissible for the limited purpose of explaining why Collins could not remember exactly what occurred the night of the incident. Specifically, the State introduced the evidence to show that Collins was afraid to testify against Flynn. As Flynn acknowledges, the trial court "must determine what the State is attempting to prove by introducing that testimony." Appellant's brief, p. 35. Here, the trial court heard the State's purpose and overruled Flynn's objection. Although Flynn contends the State's argument at trial "doesn't make sense," he has failed to direct us to any authority which would support his claim that the trial court abused its discretion. Based on the record, the prejudicial impact of the evidence did not outweigh its probative value. Therefore, the trial court did not error in admitting evidence of prior bad acts for the purpose of demonstrating Collins' fear of Flynn. *See Johnson v. State*, 655 N.E.2d 502, 505 (Ind. 1995).

## VI.

The sixth issue is whether the assigned public defender should have continued as Flynn's counsel. Flynn contends that the trial court should have granted Flynn's request for a new attorney and that he agreed to continue with his counsel only after "being pressured by the trial judge and believing he might have to continue the trial." Appellant's brief, p. 40.

 Flynn's trial was scheduled to begin December 4, 1996. During a pretrial conference on November 25, 1996, Flynn requested a change in his trial counsel.[3] The trial court questioned Flynn about his reasons for desiring a change in counsel. The trial court then informed Flynn that new counsel would delay his trial. Flynn suggested the appointment of an additional counsel. The trial court then informed Flynn that it would be observing the trial and would declare a mistrial if it felt his counsel's representation interfered with Flynn's right to a fair trial. Further, the trial court explained its hesitancy in granting Flynn's request:

"Court: So from the Court's [perspective] first of all, the Court doesn't know how to rule on people's feelings, because a lot of people who think that they may end up going to prison have feelings that, that is not proper. I can't rule on your feelings because I don't know what that means. Now you, I have asked to articulate some things, which you have not, you used some conclusive statements which have not been supported by what you have told me otherwise. And you're anticipating something, which have [sic] not yet occurred. You have a little bit of knowledge about something with regard to some numbers about the Rules of Evidence and some other things, which conflicts of interest you may have heard that term, but you don't apply them properly. So it is difficult for this Court to rule upon those kinds of concerns since you are not using the terms the right way. The Court has a number of options, we can·proceed to trial on the fourth as

---

**2.** Indiana Evidence Rule 404(b) does not contain the word 'opportunity.'

**3.** Further, we note that although an indigent defendant has the right to representation by counsel, he does not have the right to representation by court-appointed counsel of his choice. *Moore v. State*, 557 N.E.2d 665, 668 (Ind.1990).

you requested. We've already moved other cases that were scheduled on December third to accommodate you ... now you come in and say that you want a different attorney, but you have not been able to articulate anything, that I can tell that would warrant changing counsel.

\* \* \* \* \*

Flynn: I said I apologize for the inconvenience I've caused this Court.

Court: Well, it's not an inconvenience, I'm just explaining the things, the steps that we've gone through to get where we are. Uh you've made some statements, but I haven't seen any support for those. Now are you saying that you're withdrawing your request for change of counsel or ... ?

Flynn: Yeah, I'll do that.

Court: Well you didn't even hear the alternative.

Flynn: That's, that's fine.

Court: You don't want to hear the alternative?

Flynn: You don't need to go any further and waste any more of your time, Your Honor.

Court: Well, Mr. Flynn, the problem is, is if we don't take the time to address these concerns now uh based upon the fact that you've already filed a number of motions on your own, you'll probably being using court time later on if you don't like what happens now. So usually it takes less time to deal with things now then it does for you to try undo them later.

Flynn: I understand.

Court: So if you say that you don't want to waste the Court's time that's fine we won't waste the Court's time as you say, but when you file your motions later they will be denied, because you didn't take the time to make a record at this time. Do you understand that?

Flynn: Okay. Yes, sir.

Court: So I, as I understand it, you're withdrawing your request for Change of Counsel?

Flynn: Yes, sir.

\* \* \* \* \*

Court: I would also want to advise you, Mr. Flynn that if you do not raise issues and then, before the trial and then raise them after you may very well waive those. And so if you just sit back and don't do anything hoping that something comes up that you can use the undo process at that point, it may very well be too late at that point. Do you understand that?

Flynn: Yes, sir. . . .

\* \* \* \* \*

Attorney Nowak: ... He came in here to request a change and he's withdrawn it, he's not happy with that, I just want to ask him again, if he wants, if you do want a change in counsel you've got to ask for it now.

Flynn: No, I don't want one."

Record, pp. 284–293. The trial court provided Flynn with every opportunity to express a continued desire to change counsel. Further, the trial court explained to Flynn that his failure to raise any issue would possibly waive later review. Finally, Flynn's counsel questioned him again as to whether he desired a change in counsel. Flynn withdrew his request and clearly indicated he did not want to change counsel. We do not see what more the trial court could have done. Also, we do not see how the trial court "pressured" Flynn into withdrawing his request for a change in trial counsel. At the most, the trial court explained that a change in counsel would delay his trial.[4] As Flynn withdrew his request for change of counsel and has failed to demonstrate any undue pressure, he has waived this issue.

## VII.

The final issue is whether the trial court erred in ordering Flynn's sentence for the theft charge to run consecutive to the sentences for the burglary charges. Specifically, Flynn contends the trial court violated

4. The hearing took place on November 26, 1996, during Thanksgiving Week. As the trial court explained, the court would be closed that Thursday and Friday. The trial would then begin during the next week.

Ind.Code § 35–50–1–2(c) which states in relevant part:

> "the court shall determine whether terms of imprisonment shall be served concurrently or consecutively ... However, except for crimes of violence, the total of the consecutive terms of imprisonment, ..., to which the defendant is sentenced for felony convictions *arising out of an episode of criminal conduct* shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted."

I.C. § 35–50–1–2(c) (emphasis added). We have held that "[t]he singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." *Tedlock v. State*, 656 N.E.2d 273, 276 (Ind.Ct. App.1995) (quoting *State v. Ferraro*, 8 Haw. App. 284, 800 P.2d 623, 629 (1990)). Moreover, an

> "'episode [means] an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.' This would cover the *simultaneous* robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such *contemporaneous* and related crimes as burglary and larceny, or kidnaping and robbery."

*Id.* (original emphasis).

 Here, Flynn's three convictions do not constitute a single episode of criminal conduct. Flynn entered the Ueno home and took a purse and wallet. He also removed mail from the Edwards' mailbox without permission. Finally, he entered the Torre home. Each incident constitutes a separate and distinct episode in itself. *See Reynolds v. State*, 657 N.E.2d 438, 441 (Ind.Ct.App. 1995) (holding that three burglaries committed on the same night but different homes constituted separate and distinct episodes for purposes of I.C. 35–50–1–2(c)). Thus, the limitation on the total sentence imposed by

I.C. § 35–50–1–2(c) is not applicable in this case.

Even were the limitation applicable, burglary as a class B felony is considered a crime of violence under I.C. § 35–50–1–2(a). As Flynn's two burglary convictions are considered crimes of violence, they are not subject to the limitation imposed by I.C. § 35–50–1–2(c).

For the foregoing reasons, we affirm Flynn's convictions and sentences.

Affirmed.

HOFFMAN, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

As to Issue I, I concur in result. The issue argued is that Flynn should have been permitted, *by his attorney*, to review all of the evidence to be used against him. I do not agree with the majority's rationale for holding that this issue presents no cause for reversal. The failure to present a "cogent" argument means merely that the argument has failed to persuade us. OXFORD AMERICAN DICTIONARY 121 (1980). This failure to persuade does not mean that the argument has been waived. I recognize that there are innumerable cases which clearly state that failure to present a "cogent" argument results in waiver as if such were a requirement of our Indiana Rules of Appellate Procedure. However, App.R. 8.3(A)(7) which sets forth the requirements relative to the presentation of argument in the appellant's brief, nowhere contains the word "cogent."

I do note that there is no basis for reversal upon this issue because Flynn has failed to show that he has been prejudiced by having specific pre-trial knowledge of information known to his attorney.

I concur in result as to Issue II but in doing so would express a caveat with respect to the generalized and broad statement as to the nature and purpose of Evid. R. 803(5) and as to the safeguards which are built in to protect against misuse of the rule. *See Williams v. State* (1998) Ind.App., 698

N.E.2d 848 (Sullivan, J., dissenting), *reh'g denied*.

I concur in result as to Issue V. To the extent that the evidence in question may have proved a separate and unrelated battery and confinement and a display of arguable mental instability, it may have been somewhat prejudicial but I wholly fail to discern that a reasonable trier of fact would allow such evidence to impact a guilt determination as to the burglaries and the theft.

I fully concur as to Issues III, IV, VI and VII.