## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

Jan 13 2017, 8:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Samuel L. Wait
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Samuel L. Wait, | January 13, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A03-1512-PC-2304 |
| v. | Appeal from the Elkhart Circuit Court |
| State of Indiana, | The Honorable Terry C. Shewmaker, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 20C01-1003-PC-28 |

**Baker, Judge.**

[1] Samuel Wait appeals the denial of his petition for post-conviction relief from his Child Molesting conviction, arguing that the post-conviction court erroneously determined that he did not receive the ineffective assistance of trial and appellate counsel. He also argues that he did not receive the effective assistance of post-conviction relief counsel. Finding no error, we affirm.

## Facts

[2] The underlying facts are as follows:

> In March 2006, Heather [Statts] began a relationship with Wait. At that time, she was living in Ohio with S.S., her seven-year-old daughter. In June 2006, [Statts] and S.S. relocated to live with Wait in his camper. In late August 2006, they moved to a house in New Paris.
>
> After they moved to New Paris, Wait committed multiple acts of sexual abuse against S.S. He penetrated her vagina with his finger and his penis, penetrated her anus with his penis, and, on a separate day, inserted his penis into her mouth. On another day, Wait forced S.S. to take her clothes off and "hump" his penis. S.S. saw a tattoo on Wait's penis of a red and green snake, the existence of which was stipulated to by the parties. Wait told S.S. that if she ever told anyone "that he touched her in her naughty places that he would hurt her."
>
> Statts's relationship with Wait deteriorated, and Statts and S.S. moved out of the New Paris home and returned to Ohio at the end of October 2006. But Statts and Wait resumed their relationship the following month, at which time Statts and S.S. returned to Indiana to live with Wait in Goshen. Approximately two months thereafter, S.S. told a friend's mother about the abuse, and the mother reported it to the authorities.

*Wait v. State*, No. 20A03-0904-CR-135, 2009 WL 3199127, at *1 (Ind. Ct. App. Oct. 7, 2009). On August 29, 2007, the State charged Wait with four counts of class A felony child molesting, and on December 31, 2008, the State alleged Wait to be an habitual offender and a repeat sexual offender. On January 13, 2009, Wait's jury trial took place. During the trial, the State orally moved to amend the dates in the charging information; the trial court denied the motion. The jury found Wait guilty as charged and Wait later admitted to being an habitual offender and repeat sexual offender.

On February 12, 2009, the trial court imposed forty-year sentences on each of the four convictions, with three to be served concurrently and one to be served consecutively. The trial court enhanced the sentences by thirty years in light of Wait's status as an habitual offender, for an aggregate sentence of 110 years.

Wait appealed, challenging the sufficiency of the evidence to support multiple convictions of child molesting and the imposition of consecutive sentences. This Court affirmed Wait's convictions and sentence. *Id.* Wait then filed a petition for post-conviction relief. The post-conviction court denied Wait's petition. Wait now appeals.

## Discussion and Decision

Wait raises three issues on appeal: (1) that he received the ineffective assistance of counsel at trial; (2) that he received the ineffective assistance of counsel during his appeal; and (3) that he received the ineffective assistance of counsel during his post-conviction relief proceedings.

# I.  Standard of Review

The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.*  To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993).  Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6).  Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268–69 (Ind. 2014).

# II.  Assistance of Trial Counsel

Wait argues that he was denied the effective assistance of trial counsel because his trial counsel did not pursue an alibi defense, allowed Wait to admit to being

an habitual offender and a repeat sex offender, and did not object to the prosecutor's vouching statements during closing argument.[1]

[9]    A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012). However, "[i]f we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011). "Indeed, most ineffective assistance of counsel claims can be

---

[1] Wait also argues that his trial counsel did not cross-examine witnesses to show motive, bias, or personal interest. However, he does not develop an argument on this point, but instead directs us to another section of his brief about his post-conviction relief hearing. Therefore, we decline to address this particular issue. *See Flynn v. State*, 702 N.E.2d 741, 744 (Ind. Ct. App. 1998) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").

resolved by a prejudice inquiry alone." *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

[10] Wait argues that his trial counsel erred when counsel did not pursue an alibi defense. When the State orally moved to amend the charges, Wait's trial counsel objected immediately, citing Wait's due process rights and prejudice to him by the proposed amendment. Wait mistakenly asserts that the trial court never ruled on the State's motion, which he claims resulted in prejudice to him because he was not able to provide an alibi for the proposed changed dates. However, the trial court issued a written order denying the State's motion to amend. Trial Court App. p. 140. Because the State's motion was denied, we fail to see how Wait's trial counsel was deficient or how Wait was prejudiced by the proposed amendment.

[11] Wait next argues that, because he received the ineffective assistance of counsel at trial, his admissions to being an habitual offender and repeat sex offender were not voluntarily, knowingly, or intelligently made. Wait argues that his trial counsel should have demanded a jury determination on these issues, and that a jury would have been more than likely to find in his favor. Wait offers no evidence to support his claim that his plea was not knowingly or voluntarily entered, and he does not dispute that the trial court fully advised him of the allegations, his rights, and the consequences of his admissions. The trial court asked him whether he understood that he was under no obligation to enter into an agreement admitting that he was an habitual criminal offender and a repeat sexual offender, and Wait replied affirmatively. The trial court asked him

whether he understood that by admitting that he was a repeat sexual offender and an habitual criminal offender, he was waiving his right to require that the State prove those propositions to a jury beyond a reasonable doubt, and Wait replied affirmatively. Accordingly, Wait did not meet his burden to show that his trial counsel's performance was deficient or that he was prejudiced by it.

[12] Wait also contends that his trial counsel was ineffective when counsel did not object to the prosecutor's improper vouching statements during the State's closing argument, denying him a fair trial and resulting in fundamental error. When reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and, if so, (2), whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Carter v. State*, 956 N.E.2d 167, 169 (Ind. Ct. App. 2011). The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Id.* For prosecutorial misconduct to be fundamental error, it must make a fair trial impossible or amount to clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. *Id.* at 170.

[13] A prosecutor may not state his or her personal opinion regarding the credibility of a witness during trial, as such statements amount to vouching for a witness. *Thomas v. State*, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012). However, "a prosecutor may comment as to witness credibility if the assertions are based on reasons arising from the evidence presented at trial." *Id.*

[14]     Wait challenges the following parts of the State's closing argument as improper vouching:

> Society does not want torn and bleeding children coming into this courtroom.  What society wants is they want it to be caught before it gets to S.S.'s stage.

> * * *

> To say that this child is lying means you have to come up with some reason as to why the child would lie. . . . There's no way this child could even begin to create this conspiracy.  And what did the mother say?  The mother said that, sure, you know, she's a kid, she does lie about little things, but the big stuff she's not lying about. . . . You've got to have a good reason to discount this child. . . . And what mother puts a child through this when it's not a custody fight? . . . There is no reason for a mother or a child to come forward and create a lie like this. . . . Is she trying to get attention? . . . I don't think this attention was the type that a child would be looking for that she would not have backed out of this to walk away from this attention.  So it's not a lie, seeking attention; it's simply the truth.

> * * *

> There's nothing to be gained by coming forward with what is apparently going to be argued a lie. . . . All it did was cause incredible emotional harm in being able to talk about this. . . . [T]here's simply no logical explanation for it other than it happened.

Tr. p. 380-384.

[15]     We find that these statements constitute improper vouching for S.S.'s and her mother's credibility. The credibility of S.S. was central to this case. We find that the prosecutor's statements that S.S. and her mother had no reason to lie; that the jury would have to find a reason for S.S. to lie or to discount her story; and that the jury should believe S.S. because "it's simply the truth" and that "there's simply no logical explanation for it other than it happened" were not based on evidence presented in trial. We conclude, therefore, that these statements constituted improper vouching. *See Lainhart v. State*, 916 N.E.2d 924, 938 (Ind. Ct. App. 2009) (finding that prosecutor's statement during closing argument that "if any officer would even come close to not putting out exactly what happened telling the truth, they're out" constituted improper vouching and commentary on the justness of the cause).

[16]     The prosecutor's assertion that "there's nothing to be gained by coming forward with" the allegation because it would only "cause incredible emotional harm in being able to talk about this" was also inappropriate. Tr. p. 384. The prosecutor's assertion that bringing forward the allegation caused "incredible emotional harm" suggested that the prosecutor knew that S.S. was telling the truth. *See Brummett v. State*, 10 N.E.3d 78, 87 (Ind. Ct. App. 2014) (finding that the prosecutor could say that a "witness had nothing to gain by, by being here today" but that the prosecutor improperly vouched for a witness by saying that "[h]e just had to do the right thing" because it suggested that the prosecutor knew that the witness was telling the truth).

[17] However, we cannot say that this misconduct placed Wait in a position of grave peril. During the trial, the jury heard the testimony of S.S., who testified that Wait penetrated her in three different ways, forced her to perform fellatio, and forced her to remove her clothes and "hump" his penis. *Wait*, slip op. at 3. It is unlikely that the jury found Wait guilty of child molesting for a reason other than the evidence introduced at trial. Any harm done by the prosecutor's assertions in the closing argument was not substantial, and did not result in fundamental error. As a result, we find that the post-conviction court did not err by concluding that Wait did not receive the ineffective assistance of trial counsel.

## III. Appellate Counsel

[18] Wait argues that appellate counsel was ineffective because counsel did not raise the issues of the State's third amendment to the charges, the prosecutorial misconduct of improper vouching, and his sentence.[2]

[19] The standard of review for claims of ineffective assistance of appellate counsel is the same as that for trial counsel in that the defendant must show appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. *E.g.*, *Hollowell*, 19 N.E.3d at 269. Ineffectiveness is rarely found

---

[2] Wait also argues that appellate counsel was ineffective because counsel did not raise the issue of Wait's trial counsel not eliciting sufficient testimony from a defense witness. To support his argument, Wait directs us to a discussion of his post-conviction relief hearing. Because he does not present a cogent argument, he waives this issue.

when the issue is the failure to raise a claim on direct appeal. *Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999). The decision as to what issues to raise on appeal is one of the most important strategic decisions made by appellate counsel, and we give considerable deference to those decisions. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997). To succeed on this claim, the petitioner must show that the unraised issue was significant, obvious, and clearly stronger than the issues that were raised. *Id.* at 194.

[20] Wait argues that appellate counsel was ineffective because appellate counsel did not raise the issue of the State's amendment to the charges. However, as discussed above, the trial court denied the State's motion to amend the charges. Accordingly, appellate counsel was not deficient in not raising this issue.

[21] Wait also argues that appellate counsel was ineffective because counsel did not raise the issue of prosecutorial misconduct nor did his counsel challenge his sentence. As for the prosecutorial misconduct, we have already found no fundamental error, so Wait's appellate counsel did not err in not raising it on appeal. As for his sentence, his appellate counsel already challenged it during his direct appeal, arguing that the trial court erred by ordering one of the four sentences to be served consecutively to the other three concurrent terms; we affirmed the trial court's decision. *Wait*, slip op. at 3-4. During Wait's post-conviction hearing, one of his appellate attorneys testified that "viable issues were somewhat limited," post-conviction tr. p. 14, and discussed the decision-making process about which issues to raise on direct appeal. Wait's appellate attorneys acted based on strategy, and we give great deference to their

decisions. Accordingly, Wait has not shown that his appellate counsel was deficient or that he was prejudiced by their performance.

## IV. Post-Conviction Relief Counsel

[22] Wait argues that post-conviction relief counsel was ineffective because counsel did not competently represent him. Specifically, Wait asserts that counsel did not present adequate additional evidence, did not make cogent arguments concerning Wait's ineffective assistance of counsel claims, did not adequately question his witnesses, and did not make cogent arguments against Wait's sentence enhancement.

[23] There is no constitutional right under the federal or state constitution to counsel in post-conviction proceedings. *Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012). "When evaluating post-conviction counsel, courts inquire whether 'counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court.'" *Id.* (citing *Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989)).

[24] Wait's first post-conviction counsel filed a petition that listed five grounds for relief; the post-conviction court allowed the claims of ineffective assistance of trial and appellate counsel to go forward, finding the others to have been waived, res judicata, or abandoned. Wait's second post-conviction counsel called and questioned witnesses, including one of Wait's trial attorneys, one of Wait's appellate attorneys, and a witness not called during Wait's trial, and submitted proposed findings of fact and conclusions of law. In short, his

counsel appeared and represented him in a procedurally fair setting, and the post-conviction court rendered a judgment on the merits of his claims. We find that Wait did not receive the ineffective assistance of post-conviction counsel.

[25] The judgment of the post-conviction court is affirmed.

Mathias, J., concurs.

Pyle, J., concurs in result.